# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| **MICHAEL P. MCGILL AND TATYANA BOBROVA, as husband and wife,** | Civil No. 17-01047 (SRN/HB) |
| **Plaintiffs,** | **ORDER** |
| **v.** | |
| **CONWED CORPORATION and its predecessors,** | |
| **Defendant.** | |

---

Michael S. Polk, Michael R. Strom, and Ryan T. Gott, Sieben Polk, PA, 1640 South Frontage Road, Ste. 200, Hastings, MN 55033 for Plaintiffs.

Michael M. Sawers and Steven J. Kirsch, Briggs & Morgan, PA, 80 South 8th St., Ste. 2200, Minneapolis, MN 55402; Robert D. Brownson and Kristi K. Brownson, Brownson & Linnihan, PPLP, 225 South Sixth St., Ste. 4800, Minneapolis, MN 55402 for Defendant.

---

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on (1) Defendant's Motion to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or, in the alternative, for dismissal under the abstention doctrine of *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) [Doc. No. 8]; and (2) Plaintiffs' Motion to Remand to State Court pursuant to 28 U.S.C. § 1447(c) [Doc. No. 18]. For the reasons set forth below, the Court denies Plaintiffs' Motion to Remand to State Court and grants Defendant's Motion to Dismiss for lack of personal jurisdiction.

## I.      INTRODUCTION

Plaintiffs move the Court to remand this case to Ramsey County District Court arguing that it was improperly removed because this Court does not have subject matter jurisdiction. When an action is removed to federal court, "the party seeking removal and opposing remand" has the "burden of establishing federal subject matter jurisdiction." *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993) (citing *Bor-Son Bldg. Corp. v. Heller*, 572 F.2d 174, 181 n.13 (8th Cir.1978)). "A defendant is not required to submit evidence establishing federal-court jurisdiction with its notice of removal unless the plaintiff or the court questions the defendant's claim of jurisdiction." *Pudlowski v. St. Louis Rams, LLC*, 829 F.3d 963, 964 (8th Cir. 2016) (per curiam) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014)). But when a plaintiff challenges jurisdiction on a motion to remand, the district court may consider sworn affidavits submitted by the parties to resolve whether it has federal subject matter jurisdiction. *Id.*

If the Court finds that it has subject matter jurisdiction and denies Plaintiffs' Motion to Remand, Defendant Conwed Corporation ("Conwed") moves the Court to dismiss this action on the grounds that personal jurisdiction cannot be exercised over Conwed in this forum. When a defendant challenges the existence of personal jurisdiction, the plaintiff bears the burden of making "a prima facie showing of personal jurisdiction over the challenging defendant." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). The plaintiff may meet this burden by pleading facts sufficient to support a reasonable inference that the defendant can be subjected to jurisdiction within the forum state. *See Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004). This

inference is subject to testing not solely on the pleadings and matters embraced by the pleadings, but "by the affidavits and exhibits presented with the motions and in opposition thereto." *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012) (citation omitted). Where—as is the case here—the Court has not conducted an evidentiary hearing, it must view the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party. *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011) (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)). However, "the party seeking to establish the court's personal jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction." *Fastpath*, 760 F.3d at 820.

With these principles in mind, the Court recites the background of the case considering not only Plaintiffs' complaint, but also the affidavits and exhibits presented by both parties in conjunction with their respective motions.

## II.   BACKGROUND

### A. The Parties

Conwed, formerly known as the Wood Conversion Company, was incorporated under the laws of Delaware in 1921. (*See* Decl. of Robert E. Crowson, Jr. ("Crowson Decl.") at ¶ 3 [Doc. No. 11].) In February of that year, it registered itself in Minnesota as a foreign corporation. (*See* Aff. of Michael M. Sawers ("Sawers Aff."), Ex. C at 1 [Doc. No. 12-3].) From at least 1959 to 1985, Conwed was in the business of manufacturing ceiling tile, some of which contained asbestos. (Crowson Decl. ¶¶ 6–8.)  Specifically, Conwed produced asbestos-containing ceiling tile from 1959 to 1974. (*Id.* ¶ 6.) Until 1985, Conwed

manufactured tile in a mill located in Cloquet, Minnesota. (*Id.* ¶ 7.) That year, however, Conwed sold its ceiling tile business, including the mill in Cloquet, and it thereafter ceased manufacturing, selling, and distributing ceiling tile or any other product. (*Id.* ¶ 7–8.)

During some of the years that Conwed manufactured ceiling tile, Plaintiff Michael P. McGill ("McGill") worked as a laborer, carpenter apprentice, and carpenter in Kansas. (Aff. of Michael Polk ("Polk Aff."), Ex. A - State Court Complaint ("Compl.") at 3, ¶ 4 [Doc. No. 17-1].) Between 1968 and 1975, he worked at his father's Kansas City interior construction company, the Jim McGill Company. (Polk Aff., Ex. C at 26–28 [Doc. No. 17-3].) The Jim McGill Company distributed and installed ceiling tile manufactured by Conwed, and McGill installed this tile at job sites primarily in Kansas. (*Id.* at 45–53.)

McGill alleges that during his work installing ceiling tile, he was exposed to the asbestos-containing products and raw materials manufactured, sold, and/or distributed by Conwed. (Polk Aff., Compl. at 3–4, ¶¶ 4–5.) McGill further alleges that as a result of inhaling and ingesting the asbestos fibers contained in these products, he contracted mesothelioma. (*Id.* at 3, ¶ 4.) McGill's mesothelioma was diagnosed in December of 2015. (*See* Polk Aff., Ex. B.) After this diagnosis, Plaintiff, along with his wife Tatyana Bobrova (collectively, "Plaintiffs"), sued Conwed.

### B. Procedural History

The first relevant legal action that Plaintiffs brought against Conwed was initiated in the Missouri Circuit Court, in St. Louis, Missouri, in March of 2016. (Def.'s Mem. in Support of Mot. to Dismiss ("Def.'s Mem. Mot. Dismiss") at 5 [Doc. No. 10].) In addition to Conwed, that action named 13 other defendants. (*Id.*) Conwed successfully moved to

dismiss that lawsuit for lack of personal jurisdiction. (*Id.*) On January 19, 2017, the Missouri Circuit Court dismissed Plaintiffs' complaint against Conwed without prejudice, finding, in part, that Conwed was a "Delaware corporation with its principal place of business in New York." (*Id.*) Neither Conwed nor Plaintiffs requested that the Missouri Circuit Court immediately enter judgment as to Conwed pursuant to Missouri Rule of Civil Procedure 74.01(b), which operates like Federal Rule of Civil Procedure 54(b). (*Id.* at 10.)

Following these events, on March 16, 2017, Plaintiffs sued Conwed—as the sole defendant—in Ramsey County District Court in Minnesota. (*See* Polk Aff., Compl.) On that date, Plaintiffs served a summons and the complaint upon C.T. Corporation Systems, Inc. ("CT Corporation"). (*See* Polk Aff., Ex. M [Doc. No. 17-13].) CT Corporation is listed as the "Registered Agent" for Conwed on the Minnesota Secretary of State's website. (*See* Polk Aff., Ex. L [Doc. No. 17-12].) That Minnesota state complaint alleged negligence, strict liability, and breach of warranty. (*See* Polk Aff., Compl.) These allegations, according to Defendant, are nearly identical to those of the Missouri Action. (Def.'s Mem. Mot. Dismiss at 10.) On April 4, 2017, Conwed removed the case to federal court, invoking federal diversity jurisdiction per 28 U.S.C. § 1332. (*See* Notice of Removal ¶ 1, 5 [Doc. No. 1].)

## III.  DISCUSSION

Because Plaintiffs' motion to remand implicates the Court's subject matter jurisdiction, the Court will consider it first.

### A. Plaintiffs' Motion to Remand

#### 1. Legal Standard

Plaintiffs move to remand this case to state court pursuant to 28 U.S.C. § 1447(c). An action brought in state court may be removed to federal court if it could have originally been filed in federal court. 28 U.S.C. § 1441(a). After removal, a plaintiff may move to remand the matter back to state court if the federal court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The removing party bears the burden of establishing federal jurisdiction by a preponderance of the evidence. *Altimore v. Mount Mercy Coll.*, 420 F.3d 763, 768 (8th Cir. 2005). "All doubts about federal jurisdiction should be resolved in favor of remand to state court." *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 446 (8th Cir. 2010) (citation omitted).

Here, Defendants removed to federal court invoking the Court's diversity jurisdiction. Conwed asserts that it is a citizen of Delaware and New York. (*See* Notice of Removal at 2, ¶ 6.) It further contends that because Plaintiffs are both citizens of Kansas, complete diversity of citizenship exists. (*Id.*) Plaintiffs disagree, asserting "there is not complete diversity between Plaintiffs and Defendant Conwed Corporation as required by 28 U.S.C. § 1332" because Conwed is a citizen of Delaware and Minnesota. (*See* Pls.' Mot. Remand at 2 [Doc. No. 18].)

At the outset, the Court notes that even if Defendant were indeed a citizen of Minnesota, as Plaintiffs allege, there would still be complete diversity of citizenship between the parties.[1] *See OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th

---

[1] It does not appear to be disputed that Plaintiffs are both citizens of Kansas. (*See* Pls.' Mem Mot. Remand at 9; Notice of Removal at 2, ¶ 6.)

Cir. 2007) ("Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship."). To the extent that Plaintiffs argue that removal was improper, then, the Court will construe their motion to be advanced under the removal statute, 28 U.S.C. § 1441(b)(2), which provides that if removal is solely based on diversity of citizenship, as is the case here, removal is prohibited if any defendant is a citizen of the state in which the action is brought. *See Hurt v. Dow Chem. Co.*, 963 F.2d 1142, 1145 (8th Cir. 1992) ("Title 28 U.S.C. § 1441(b) makes diversity jurisdiction in removal cases narrower than if the case were originally filed in federal court by the plaintiff. A defendant may not remove to federal court on the basis of diversity if any of the defendants is a citizen of the state where the action was filed.") Plaintiffs brought this action in Minnesota, and thus a defendant with Minnesota citizenship could not remove to federal court. The Court now turns to the question of Conwed's citizenship.

### 2. Location of Conwed's Principal Place of Business

"The jurisdiction of a federal court under 28 U.S.C. § 1332(a) depends on the citizenship of the parties at the time the action is commenced." *Chavez-Lavagnino v. Motivation Educ. Training*, 714 F.3d 1055, 1056 (8th Cir. 2013) (citing *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71 (2004)). The definition of when an action is "commenced" is dependent on state law. *See Winkels v. George A. Hormel & Co.*, 874 F.2d 567, 570 (8th Cir. 1989) ("A federal court must honor state court rules governing commencement of civil actions when an action is first brought in state court and then removed to federal court . . . .") Under Minnesota law, "a civil action is commenced

against each defendant" when "the summons is served upon that defendant." Minn. R. Civ. P. 3.01(a).

Consequently, the Court focuses on Conwed's citizenship as of March 16, 2017, when it was served with the summons. For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A corporation's "principal place of business," in turn, refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). This place is often referred to as the "nerve center" of the corporation. *Id.* at 93. Moreover, this "'nerve center,' usually [a corporation's] main headquarters, is a single place. . . . And it is a place within a State." *Id.* at 93. "It is not the State itself." *Id.*

Here, although both parties apply *Hertz*, they argue for different results. Plaintiffs argue that Conwed is a corporation that exists solely to engage in litigation, and, as such, Conwed's "nerve center" is in Minnesota, where outside counsel that Conwed has hired for its asbestos litigation is located. (Pls.' Mem. Mot. Remand at 12–15.). Plaintiffs assert that since selling its business in 1985, Conwed's primary purpose and "only business activity" has been "participating in asbestos related litigation." (*Id.* at 9; *see also* Pls.' Reply Mot. Remand at 4 ("Since Conwed sold its manufacturing facilities in the mid-1980's, the purpose, product, revenue, and costs of the corporation are solely related to litigation.").) This is significant to Plaintiffs, as they contend that Minnesota outside counsel who have worked on Conwed's asbestos cases since 1986–87 but who are not officers or directors of

the company now "run the company." (*See* Pls.' Mem. Mot. Remand at 14–15.) According to Plaintiffs, these attorneys are the "individuals who are asserting actual direction, control, and coordination of Conwed." (*Id.* at 14.) They make decisions for "what remains of Conwed," possess "Conwed's corporate documents," and instruct Conwed's "independently-contracted president" on "what to say or sign" for the purposes of litigation. (*Id.* at 14–15.) In fact, Plaintiffs assert, "[o]ther than the Conwed asbestos defense lawyers who are officed in Minnesota, Conwed has never had an office anywhere since 1985 in which any person could have worked on behalf of Conwed." (*Id.* at 13.)

Plaintiffs also accuse Conwed historically of identifying whatever location is most beneficial to the corporation in a given case as its principal place of business. (*See id.* at 11.) Plaintiffs describe two cases, one in 1992 and one in 2009, where Conwed asserted that its principal place of business was in Minnesota. (*See id.* at 10–11.) Plaintiffs also point out that in another case in 2003, Conwed described its principal place of business as being in New Jersey. (*Id.* at 11.) According to Plaintiffs, these facts not only reveal that Conwed's principal place of business really is in Minnesota, but also demonstrate that the company has a history of "jurisdictional manipulation." (*Id.* at 11–12.) And in any event, Plaintiffs argue, it is not their burden to identify Conwed's "nerve center"; rather, it is Conwed's burden as the removing party—a burden it has failed to meet. (*Id.* at 14; Pls.' Reply Mot. Remand at 9.)

Conwed disagrees. It contends that it has indeed met its burden of showing that its principal place of business is in New York. (*See* Def.'s Opp'n Mem. Remand.) Defendant describes itself as a dormant corporation which nonetheless maintains a principal place of

business in New York. (Crowson Decl. ¶¶ 4–8.) It identifies Robert E. Crowson, Jr., ("Crowson") as its President—who reports to Conwed's Board of Directors—and maintains that his business address is Conwed's New York office located at 520 Madison Avenue in New York City. (Def.'s Reply to Pls.' Opp'n to Mot. to Dismiss ("Def.'s Reply Mot. Dismiss") at 6 [Doc. No. 24].) Also located at that address is the office of Conwed's Corporate Secretary, who "keeps its current corporate records" there as well. (Second Decl. of Robert. E. Crowson, Jr. ("Second Crowson Decl.") at ¶ 4 [Doc. No. 25].) Beyond these records, some of Conwed's documents related to asbestos litigation are kept by Conwed's products liability counsel in Minnesota and the Minnesota Historical Society ("MHS") also owns and maintains some Conwed-related records. (Def.'s Reply Mot. Dismiss at 6–8.)

As additional proof that Conwed's principal place of business is in New York, Conwed points to its self-authenticating corporate records, namely, the annual Franchise Tax Report ("Tax Report") it is required to disclose annually to the Delaware Secretary of State. (Def.'s Reply Mot. Dismiss at 6–7.) This Franchise Tax Report names Crowson as one of Conwed's corporate officers, and lists Conwed's corporate office as 520 Madison Avenue, New York, New York. (Second Crowson Decl., Ex. A [Doc. No. 25-1].)

While Conwed concedes that it had significant contacts with Minnesota during the time when the company produced ceiling tile, (*see* Crowson Decl. at ¶ 6–7), it is clear that Conwed has not conducted business in Minnesota for over 30 years. Conwed highlights that it has not been authorized to do business in Minnesota since January of 2009, when the Minnesota Secretary of State revoked Conwed's Certificate of Authority, "result[ing] in the automatic cessation of Conwed's authority to transact business in Minnesota" per Minn.

Stat. § 303.17, subdiv. 5.[2] (Def.'s Opp'n Mem. Remand at 6.) As such, it argues that Conwed's principal place of business, or "nerve center," cannot possibly be in Minnesota, since Conwed does not even have the authority to transact any business whatsoever in the state. (Def.'s Opp'n Mem. Remand at 5–6.) As for its current connections to the state, Conwed points only to the active asbestos litigation it has in Minnesota, amounting to 1.6% of the active cases it has pending in 22 states. (Second Crowson Decl. at ¶ 2.) Finally, as to claims that it has engaged in jurisdictional manipulation, Defendant argues that Plaintiffs' focus on Conwed's 12- to 25-year-old litigation is misplaced, as the Court's focus in this litigation must be on where Conwed currently has its principal place of business. (*Id.* at 6–7.)

Having considered the parties' arguments, the Court finds that Conwed has met its burden of showing that its principal place of business is in New York. In a sworn declaration, Crowson attests that he is the current president of Conwed—employed in that capacity since 2011—with a business address in New York. (Second Crowson Decl. at ¶ 3.) Importantly, Crowson further attests that Conwed's principal place of business is in New York, and that Conwed's corporate secretary keeps Conwed's corporate records in the company's New York office. (*Id.* at 4.) Moreover, the 2016 Tax Report that Conwed submitted in Delaware also shows this same New York address as the company's—and Crowson's—business address. (Second Crowson Decl., Ex. A.) In the absence of any

---

[2] This subdivision is titled "Cessation of authority," and provides that "[u]pon the issuance of such certificate of revocation, the authority of the corporation to transact business in this state shall cease."

evidence contradicting these documents, the Court finds that they establish that Conwed's current principal place of business is in New York.

Although it is true that these documents do not, in detail, describe how Crowson or the other two officers listed in the Delaware Tax Report, "direct, control, and coordinate" the Corporation's activities from New York, in this case, that deficiency is not fatal. Both parties concede that Conwed is an inactive corporation, not currently engaged in the production, distribution, or sales of any products. Even assuming, as Plaintiffs argue, that Conwed's corporate purpose is now solely tied to litigation, it is a tenet of the attorney-client relationship that the client is ultimately in control of the high-level actions taken by its retained counsel. *See, e.g.*, *Turner v. Burlington N. R.R. Co.*, 771 F.2d 341, 345 (8th Cir. 1985) ("[A]n attorney of record may not compromise, settle, or consent to a final disposition of his client's case without express authority.") (quoting *Thomas v. Colo. Trust Deed Funds, Inc.*, 366 F.2d 136, 139 (10th Cir. 1966)); *Hutchinson v. Florida*, 677 F.3d 1097, 1104–1109 (11th Cir. 2012) ("[I]n a traditional lawyer-client relationship, a client hires a lawyer to represent him in a discrete legal matter. . . . [I]t is assumed that the client has the ability to direct the actions of the lawyer . . . ."). Plaintiffs urge this Court to find that, to the contrary, outside counsel directs the actions of its client and the residence of outside counsel should govern the identity of the client's principal place of business. Plaintiffs cite no authority for this untenable position and this Court is not aware of any such authority.

The Court also rejects Plaintiffs' suggestion that, under *Hertz*, the documents that Conwed offers are insufficient to establish New York as Conwed's principal place of

business. Plaintiffs point to *Hertz*'s warning against permitting a corporation to manipulate jurisdiction by merely submitting a tax form and claiming the address listed as the location of its nerve center. (*See* Pls.' Reply. Mot. Remand at 9.) On this point, in the absence of controlling Eighth Circuit precedent, the Court finds persuasive an unpublished case out of the Eleventh Circuit that is very much on point. In *Annon Consulting, Inc. v. BioNitrogen Holdings Corp.*, the court found that evidence very similar to that presented here was "[c]ompetent evidence" to establish the location of a company's principal place of business. 650 F. App'x 729, 731 (11th Cir. 2016). There, the plaintiff company offered a "Security Agreement (identifying [the company] as 'a corporation organized and existing under the laws of Canada') and a sworn declaration by [the company's] sole director and general manager (testifying that [the company's] place of incorporation and principal place of business [were] both Ontario, Canada)." *Id.* Along with a bank statement, the court found these documents sufficient to establish a principal place of business, also noting that the record evidenced that the company was affiliated with a single address. *Id.*

Very similar proof is presented here. The record shows that Conwed is currently affiliated with only one New York City address. Conwed's president has testified in his sworn declaration that Conwed's principal place of business is in New York, and that he maintains a business address there as well. The Court finds that these documents and declarations adequately support Conwed's burden of establishing the location of its principal place of business.

The Court also rejects Plaintiffs' contention that, because they have raised a colorable argument that Conwed's principal place of business is not in New York, the legal

standard here compels a remand. (*See* Pls.' Reply Mot. Remand at 2.) It is true, of course, that the district court is required to resolve all doubts about jurisdiction in favor of remand. *Junk*, 628 F.3d at 446. But the Court has no doubts about the facts that the parties have asserted here. Nothing here calls into question the documents and declarations offered by Conwed. Plaintiffs do not point to a Minnesota Conwed office. They do not name Conwed employees working in Minnesota, or point to some other corporate tie within the state. In short, Plaintiffs do not point to a "place within" Minnesota where Conwed could have its principal place of business. *See Hertz*, 559 U.S. at 93.

Instead, Plaintiffs are left to argue that, despite not having the legal capacity to even transact business in Minnesota, Conwed should be held to have its principal place of business here on the sole ground that it retains private counsel within the state to pursue and defend litigation on its behalf. Again, the Court has found no support in case law or otherwise for that proposition, and declines to adopt it.

And finally, in the absence of legal precedent supporting a finding of personal jurisdiction based on the residence of outside counsel, discovery would be futile. Accordingly, the Court will deny Plaintiffs' request for limited discovery on this issue.

Having found that Conwed's principal place of business is in New York, the Court concludes that removal was proper and that it has subject matter jurisdiction over the case.[3] The Court thus turns to Defendant's Motion to Dismiss for lack of personal jurisdiction.

---

[3] Because removal was proper, the Court does not consider Plaintiffs' request for the attorneys' fees and costs they incurred in bringing the motion to remand. (*See* Pls.' Mem. Mot. Remand at 15.)

### B. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction

#### 1. Legal Standard

Because Conwed challenges the existence of personal jurisdiction, Plaintiffs bear the burden of making a prima facie showing that the court's exercise of personal jurisdiction over Conwed is proper. *Fastpath*, 760 F.3d at 820. To make its determination, the Court may consider affidavits and exhibits submitted by the parties with their respective motions. *See Block Indus.*, 495 F.2d at 260; *see also Jet Charter Serv., Inc. v. W. Koeck*, 907 F.2d 1110, 1112 (11th Cir.1990) ("When a defendant raises through affidavits, documents or testimony a meritorious challenge to personal jurisdiction, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents.")

Here, Plaintiffs advance three separate arguments for why the Court may exercise personal jurisdiction over Defendant: (1) consent; (2) general personal jurisdiction; and (3) specific personal jurisdiction. Each argument is addressed in turn.

#### 2. Consent Jurisdiction

Plaintiffs argue that Conwed consented to jurisdiction by appointing CT Corporation—whom Plaintiffs served with a state court summons and complaint—as its registered agent for service within Minnesota. Pointing to *Knowlton v. Allied Van Lines*, 900 F.2d 1196 (8th Cir. 1990), Plaintiffs argue that "[a] foreign corporation consents to the jurisdiction of a State when a corporation appoints an agent for service of process within that State." (Pls.' Opp'n Mem. Dismiss at 7.) Defendant disagrees, first claiming that *Knowlton* is inapplicable here because it involved a corporation that, unlike Conwed, had authority to transact business in Minnesota under Minn. Stat. § 303, *et seq.* (Def.'s Reply

Mot. Dismiss at 8–10.) Second, Defendant argues that, even if the Court were to conclude that *Knowlton* applies, the Supreme Court's recent case of *BNSF R. Co. v. Tyrell*, 137 S. Ct. 1549 (2017), "implicitly overruled" *Knowlton* because *Knowlton* "extends Minn. Stat. § 303.13 past the bounds of due process, especially as applied to Conwed." (*See* Conwed's Suppl. Mem. at 3–4 [Doc. No 34].)

In *Knowlton*, the Eighth Circuit held that a corporation consents to the jurisdiction of Minnesota courts—for any cause of action—by registering to do business within the state and appointing an agent for service of process. 900 F.2d at 1200. In *Knowlton*, the plaintiff was driving through Iowa when her car collided with a van operated by an agent of defendant Allied Van Lines ("Allied"). *Id.* at 1197. Allied was a Delaware corporation and had its "principal office" in Illinois. *Id.* However, the company did business in Minnesota and as required by Minnesota law, had designated a registered agent within the state to receive service of process. *Id.* at 1197–98. The plaintiff filed suit against Allied in Minnesota. *Id.* at 1198.

The federal district court held that it did not have personal jurisdiction over Allied, but the Eighth Circuit reversed on grounds of consent. The Eighth Circuit first recognized that Minnesota's long-arm statute would not confer jurisdiction on a Minnesota court under the facts of the case. *Id.* at 1199. However, the court explained that "[c]onsent is . . . [a] traditional basis of jurisdiction" that exists "independently of long-arm statutes." *Id.* And relevant to the case, "[o]ne of the most solidly established ways of giving such consent is to designate an agent for service of process within the State." *Id.* Applying those principles, the court analyzed Chapter 303 of the Minnesota statutes and held that "appointment of an

agent for service of process under § 303.10 gives consent to the jurisdiction of Minnesota courts for any cause of action." *Id.* at 1200.

The Court agrees with Defendant that *Knowlton*'s holding is predicated on the applicability of Chapter 303 to foreign corporations with authority to do business in Minnesota. *See id.* at 1198, n.1 ("Minnesota requires that all foreign corporations *wishing to transact business within its boundaries* comply with its Foreign Corporation Act, Minn. Stat. § 303 *et seq.*, which, among other things, requires a foreign corporation to appoint an agent for service of process.") (emphasis added). And by its express terms, Chapter 303 does not apply to corporations which do not have the authority to transact business in the state. *See* Minn. Stat §§ 303.22 ("[T]his chapter shall be applicable to all foreign corporations heretofore or hereafter *transacting business* in this state.") (emphasis added); 303.03 (requiring a foreign corporation to hold a certificate of authority in order to transact business); 303.17, subdiv. 5 (providing that the authority of the corporation to "transact business in this state shall cease" if the secretary of state revokes the certificate of authority).

Here, Conwed has not been authorized to transact business in Minnesota since 2009. The Minnesota Secretary of State revoked Conwed's Certificate of Authority in January of that year, and there is no evidence in the record that Conwed has attempted to get it reinstated. Moreover, nothing in the record shows that Conwed was in fact transacting any business within the state when it was served by Plaintiffs.[4] Accordingly, the Court concludes that the strictures of Chapter 303 do not apply to Conwed, and that consequently,

---

[4] By definition, engaging in litigation does not constitute "transacting business" in Minnesota. *See* Minn. Stat. § 303.03.

the holding in *Knowlton* is inapposite. The Court therefore holds that it does not have personal jurisdiction over Conwed by virtue of consent.[5]

### 3. General and Specific Jurisdiction

Plaintiffs alternatively contend that the Court may exercise general or specific jurisdiction over Conwed by virtue of Minnesota's long-arm statute.[6] This type of personal jurisdiction is only appropriate, however, if state and constitutional requirements have been met. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995) (citing *Wines v. Lake Havasu Boat Mfg.*, 846 F.2d 40, 42 (8th Cir. 1988)). First, the contacts alleged must satisfy the state's long-arm statute. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). Second, the exercise of personal jurisdiction must comply with the Due Process Clause of the Fourteenth Amendment. *Id.* Because the Minnesota Supreme Court has interpreted the Minnesota long-arm statute to be co-extensive with the limits of due process, this Court need only address the second of these requirements. *See Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 528 (8th Cir. 1991) (citing *Rostad v. On–Deck, Inc.*, 372 N.W.2d 717, 719 (Minn. 1985)).

The bounds of due process permit a court to exercise personal jurisdiction over a non-resident defendant when that defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting

---

[5] Because the Court has held that *Knowlton* is inapplicable, it need not reach the argument advanced in Conwed's supplemental briefing that *Knowlton* was overruled by *BNSF*.

[6] Here, Minn. Stat. § 543.19.

*Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Such contacts exist when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "In assessing the defendant's 'reasonable anticipation,' there must be 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Soo Line R.R. Co.*, 950 F.2d at 528–29 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The timing of these acts is also important, as "[m]inimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003) (citing *Clune v. Alimak AB*, 233 F.3d 538, 544 n.8 (8th Cir. 2000)).

From these core principles, the Eighth Circuit has distilled a five-factor test to be used in analyzing the propriety of a court's exercise of personal jurisdiction over a non-resident defendant. This test considers: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *See Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir.2010) (citing *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir.1994)). "The first three factors are closely related and are of primary importance, while the last two factors are secondary." *Pecoraro*, 340 F.3d 562

(citing *Digi–Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996)).

Moreover, the third factor, the relation of the cause of action to the contacts, serves to distinguish the appropriate theory of jurisdiction: general or specific. "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol–Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (emphasis in original). Specific personal jurisdiction, on the other hand, "is very different." *Id.* "In order for a state court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum." *Id.* (citations and alterations omitted).

At the outset, the Court concludes that general or "all-purpose" jurisdiction over Conwed is clearly lacking. To be subject to general or all-purpose jurisdiction within a state, the "corporation's affiliations with the State [must be] be so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (internal quotations and alterations omitted). Two places that are "paradigm all-purpose forums" for a corporation are where it is incorporated and where it has its principal place of business. *Id.* at 760. And in the "exceptional case," "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761, n.19.

Here, Conwed is not "essentially at home" in Minnesota. *See id.* at 761. It is undisputed that Conwed is incorporated under the laws of Delaware. And the Court has

found that Conwed's principal place of business is in New York. Furthermore, this case is far from the "exceptional case" where a corporation may be considered "at home" in a place other than its state of incorporation or where it has its principal place of business. *See id.* at 761, n.19. Conwed does not transact business in Minnesota, and there is no evidence showing that Conwed's operations here are "so substantial and of such a nature as to render [it] at home" in this state. *Id.* As such, the Court may not exercise general jurisdiction over Conwed, and thus turns to an analysis of specific jurisdiction.

Aside from requiring that Defendant have minimum contacts with the state—which must exist (1) when the suit is filed, (2) within a reasonable period of time immediately prior to that, or (3) at the time the cause of action arose, *see Pecoraro*, 340 F.3d at 562— Plaintiffs' suit must "arise out of or relate to" those contacts. *Bristol–Myers Squibb*, 137 S. Ct. at 1780 (alterations omitted). In other words, specific jurisdiction demands that there be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Id.* at 1781 (alterations in original).

Now considering only specific jurisdiction, the Court turns to the nature, quality, and quantity of Conwed's contacts with Minnesota during the legally-relevant time periods, and those contacts' relation to Plaintiffs' suit. First, the Court finds that during two of the three legally-relevant time periods, Conwed's contacts with Minnesota were limited to: (1) the presence of its products liability counsel within the state; (2) the litigation-related documents that counsel stores in Minnesota; and (3) the Conwed-related documents that the MHS keeps in the state, though ownership of those documents is disputed.

Such contacts are outside counsel's contacts, not Conwed's contacts. Moreover,

these attenuated contacts are clearly not connected to Plaintiffs' present claims, and "[w]hen there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol–Myers Squibb*, 137 S. Ct. at 1781. Here, Plaintiffs bring claims against Conwed for negligence, strict liability, and breach of warranty. (*See* Notice of Removal.) The basis of these claims is Conwed's alleged "manufacturing, selling, installing, and distributing [of] asbestos-containing products and raw materials" during the years that McGill allegedly installed ceiling tile, namely, from 1965 to 1975. (*See* Notice of Removal; Pls.' Opp'n Mem. Dismiss at 4.) Plaintiffs' suit does not "arise out of or relate to" Conwed's *present* contacts, i.e. litigation, in Minnesota. *See Bristol–Myers Squibb*, 137 S. Ct. at 1780. Accordingly, those contacts may not form the basis of specific jurisdiction.

This leaves only one remaining time period for examining the relevant contacts— when the cause of action arose—and the Court again concludes that Conwed's contacts during that time do not give rise to specific jurisdiction. It is undisputed that Plaintiffs' cause of action "arose" in 2015 when McGill was diagnosed with mesothelioma. (*See* Def.'s Mem. Mot. Dismiss at 15–17; Pls.' Opp'n Mem. Dismiss at 18–19.) And in that year Conwed's contacts appear to have been equivalent to the contacts already described: litigation unrelated to the present suit, corresponding documentation, and the MHS documents. These contacts again cannot give rise to specific personal jurisdiction because they are too attenuated and are unrelated to Plaintiffs' claims. In short, the Court holds that Conwed has no contemporary contacts that could subject it to personal jurisdiction in Minnesota for the claims asserted here.

Plaintiffs would have the Court reach a contrary conclusion, but, fatal to their position, they do not point to any contacts in 2015 or 2017 that could subject Conwed to specific jurisdiction in Minnesota for the claims asserted here. When describing the nature, quality, and quantity of Conwed's contacts in Minnesota, Plaintiffs primarily focus on Conwed's asbestos-manufacturing activities prior to the 1980's and highlight the company's current asbestos-related ligation. (*See* Pls.' Opp'n Mem. Dismiss 12–16.) But as already explained, under *Pecoraro*, for personal jurisdiction purposes, Conwed's activities before 1985 are irrelevant to a cause of action that arose thirty years later—Conwed's contacts must be contemporaneous to this lawsuit.[7] Similarly, for the reasons set forth above, Conwed's current asbestos litigation cannot be considered. In sum, Plaintiffs do not point to any contacts that could support specific personal jurisdiction in this case.

The Court thus concludes that the three main jurisdictional factors considered by the Eighth Circuit—the nature, quality, and quantity of the defendant's contacts with the forum, and the relation of those contacts to the cause of action—weigh against exercising specific personal jurisdiction over Conwed. The two remaining, secondary factors—the interest of the forum and the convenience of the parties—do not alter that determination. With no party to this case being a Minnesota citizen, it is unlikely that Minnesota would have a clear interest in providing a forum for this action. And with respect to the

---

[7] Plaintiffs do not address *Pecoraro*'s temporal limitation on the jurisdictional analysis. Instead, they focus on the standard to be used to determine if a plaintiff's claim arises out of a defendant's contact with the forum. But, as already described, even before conducting this "nexus" analysis, relevant jurisdictional contacts must be identified. For this reason, Plaintiffs' discussion of *Myers v. Casino Queen, Inc.*, 689 F.3d 904 (8th Cir. 2012) and *Aly v. Hanzada for Import and Export Co., LTD*, 864 F.3d 844 (8th Cir. 2017) is unavailing. These cases neither cite *Pecoraro* nor address the temporal limitation imposed by that case.

convenience of the parties, the same considerations ring true. No party here is a Minnesota citizen, and there is no evidence in the record that any witnesses reside here. With potential witnesses located elsewhere, the balance of convenience "is in equipoise." *See Datalink Corp. v. Perkins Eastman Architects, P.C.*, 33 F.Supp.3d 1068, 1076 (D. Minn. 2014). All factors thus considered, the Court concludes that it may not constitutionally exercise specific personal jurisdiction over Conwed in this case.

Accordingly, the Court grants Defendant's motion to dismiss for lack of personal jurisdiction, and it does not address Defendant's alternative argument for dismissal under the *Colorado River* abstention doctrine.

## IV.    ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Plaintiffs' Motion to Remand to State Court [Doc. No. 18] is **DENIED**.

2. Defendant's Motion to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) [Doc. No. 8] is **GRANTED**. This case is dismissed **WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 10, 2017               s/Susan Richard Nelson
                                      SUSAN RICHARD NELSON
                                      United States District Judge